# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ALISON BARKHOLTZ, et al.,
      Plaintiffs,

      v.                           Case No. 24-cv-889

MICHAEL TORREZ IVORY, et al.,
      Defendants.

---

## DECISION AND ORDER

I previously granted defendant Summit Logistics Group's ("Summit") Rule 12(b)(6) motion to dismiss for failure to state a claim. ECF No. 70. Plaintiffs filed an amended complaint with additional allegations, and Summit again moves to dismiss the claims against it. For the reasons that follow, Summit's motion to dismiss for failure to state a claim is denied.

## I. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss under Rule 12(b)(6), I must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616.

## II. DISCUSSION

On November 6, 2022, at approximately 7:00 p.m., Thomas Schneller was killed when a box truck driven by Michael Torrez Ivory failed to yield and turned onto the highway. Ivory was an employee of CH Logistics, a motor carrier, which was hired by Summit Logistics Group, a shipping broker. Plaintiffs allege that Summit had a duty to exercise reasonable care in hiring a motor carrier to ship cargo for Washington Producers, breached that duty by hiring CH Logistics while it knew or should have known that CH Logistics was unsafe, and that this negligent decision ultimately caused the resulting accident.

In a previous decision, I found that the complaint failed to allege enough facts to plausibly suggest that Summit's decision to hire CH Logistics was negligent. The new amended complaint now alleges that CH Logistics had a "history of safety violations and crashes immediately preceding the underlying contract." ECF No. 71, ¶ 75. CH Logistics reported six crashes in the year 2022, two of which occurred in September 2022 and resulted in multiple injuries, both occurring one month before they were hired by Summit. *Id.* ¶ 19. Summit also had "an above-average number of safety violations relation to risk categories such as unsafe driving, vehicle maintenance, and out-of-service rates," information that was publicly available. *Id.* ¶ 20. As a result, plaintiffs conclude that Summit "knew (or should have known) that choosing CH Logistics Corp. to transport goods was reasonably likely to result in crashes that would injure others." *Id.* ¶ 22.

Plaintiffs style their amended claims against Summit in two counts: negligent hiring and negligent infliction of emotional distress. To state a claim for negligent hiring under Wisconsin law, the plaintiff must allege (1) that the employer had a duty of care; (2) that

the employer breached its duty; (3) that the act or omission of its employee was a cause-in-fact of the plaintiff's injury; and (4) that the act or omission of the employer was a cause-in-fact of the wrongful act of the employee. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis.2d 250, 267–68, 580 N.W.2d 233 (1998). The court must also find that imposing liability would not contravene Wisconsin's judicial public policy. *Id.* at 260 (citing *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis.2d 723, 737, 275 N.W.2d 660 (1979)).

Plaintiffs identify two ways that a principal hiring a negligent independent contractor may itself be liable to third parties in Wisconsin: (1) negligence "in selecting, instructing or supervising" the contractor; or (2) breaching some "non-delegable duty" arising out of public policy. ECF No. 76 at 6 (quoting *Chapmen ex rel. Chapman v. Mut. Serv. Cas. Ins. Co.*, 35 F.Supp.2d 699 (E.D. Wis. 1999)). The first is simply the tort described in *Miller* rephrased to fit the principal-contractor context. The second covers cases where the contractor was hired to perform "inherently dangerous" or "extrahazardous" work. *See Brandenburg v. Briarwood Forestry Serv's, LLC*, 2014 WI 37, ¶ 59, 847 N.W.2d 395 (2014). Plaintiffs have not argued that CH Logistics was performing inherently dangerous work, so I will not consider that theory.[1]

The first element is undisputed. *Miller*, 219 Wis.2d, ¶ 9 ("In Wisconsin, everyone has a duty of care to the whole world."). The third element is also undisputed, as the amended complaint adequately alleges that CH Logistics and Ivory negligently caused the accident. Summit disputes the second element, arguing that plaintiffs failed to

---

[1] It seems doubtful that an ordinary box truck shipping buckwheat over the highway would be considered "inherently dangerous" as that term is used. *See, e.g., Lofy v. Joint Sch. Dist. No. 2, City of Cumberland*, 42 Wis.2d 253, 263 166 N.W.2d 809 (1969) ("The operation of a bus between Cumberland and Madison over modern highways cannot be considered inherently dangerous.").

plausibly allege it knew or should have known that CH Logistics was unsafe, dangerous, or unqualified. ECF No. 73 at 9–11. Summit also disputes the fourth element, arguing that plaintiffs failed to plead sufficient facts plausibly showing a "nexus" between Summit's decision to hire CH Logistics and the fatal accident. ECF No. 73 at 6–8; *Miller*, 219 Wis.2d, ¶ 14.

## A. Breach of a Duty

Summit argues that the second amended complaint fails to plausibly show, with facts taken as true, that it was negligent in its decision to hire CH Logistics. The complaint alleges:

> As of October 31, 2022, CH Logistics reported six (6) crashes in the year 2022. Two of those crashes resulted in multiple injuries, both of which occurred in September 2022, just one month prior to the contract for the load at issue.

ECF No. 71, ¶ 19.

> Additionally, upon information and belief, CH Logistics had a concerning safety record and regulatory violations as of October 31, 2022. Specifically, CH Logistics had an above-average number of safety violations relating to risk categories such as unsafe driving, vehicle maintenance, and out-of-service rates. The information about safety and the respective categories outlined above were publicly available and readily accessible.

*Id.* ¶ 20.

> These rates of safety violations, coupled with the recent history of crashes, including crashes resulting in multiple injuries, should have served as "red flags" for Summit Logistics Group, LLC regarding the likelihood of future crashes when evaluating and selecting CH Logistics Corp. for the October 31, 2022, transportation contract.

*Id.* ¶ 21. As Summit identifies in its briefing, these statements leave something to be desired. Without also knowing how many trucks CH Logistics operated in 2022 or trips its drivers took successfully, I struggle to speculate whether six crashes in one year is

4

concerningly high or relatively low, or whether there were alternative motor carriers capable of doing this trip with fewer incidents. They also fail to mention whether the CH Logistics driver was at fault in any of these incidents. And the fact that CH Logistics had an "above-average" number of safety violations in 2022 is barely helpful because "carriers that are worse than average" is a category describing approximately half of all shipping companies, many of whom are insured and licensed in good standing.

However, these allegations together go beyond "sheer possibility" and allow me to infer that Summit might have plausibly breached its duty by hiring an incompetent contractor. *Iqbal*, 556 U.S. at 678. A pattern of accidents and inspection failures shortly before Summit's hiring decision could plausibly suggest that Summit failed to perform a reasonable inquiry into CH Logistics' safety record or was aware of its poor record and nevertheless disregarded it.[2] Therefore, plaintiffs have adequately stated element two of a negligent hiring claim.

## B.      Causal Nexus

Summit next argues that the complaint fails to allege a causal nexus between Summit's negligent hiring and the negligence by CH Logistics and Ivory leading to the collision. *See Miller*, 219 Wis.2d, ¶ 14 ("[T]here must be a nexus between the negligent hiring, training, or supervision and the act of the employee."). For a causal nexus to exist,

---

[2] Similar allegations have been found sufficient for analogous non-Wisconsin claims. *See, e.g., Jones v. D'Souza*, No. 7:06-cv-547, 2007 WL 2688332, *5 (W.D. Va. Sept. 11, 2007) (motor carrier allegedly had limited experience, was impaired financially, and had a conditional or unsatisfactory FMCSA safety rating); *Riley v. A.K. Logistics, Inc.*, No. 15-cv-00069, 2017 WL 2501138, **4–5 (E.D. Mo. Jun. 9, 2017) (no summary judgment where carrier had BASIC FMCSA scores in the bottom 8% for safe driving and bottom 11% for hours of service, had 17 unsafe driving violations, and drivers taken out of service at twice the national average rate); *Scott v. Milosevic*, 372 F.Supp.758, 768–69 (N.D. Iowa 2019) (no summary judgment where motor carrier was new with a limited track record); *Beavers v. Victorian*, 38 F.Supp.3d 1260, 1272 (W.D. Ok. 2014) (no summary judgment where carrier had no FMCSA safety rating and defendant did not inquire into carrier's equipment or maintenance practices, the credentials or safety records of its drivers, or the experience of its owner).

Summit's negligence must have been a "cause-in-fact" of the "wrongful act" of the "employee." *Id.* Here, the "employee" under *Miller* would be the independent contractor CH Logistics, who plaintiffs allege was negligent only by the doctrine of *respondeat superior*, not any independent negligence or negligent supervision. ECF No. 71, ¶¶ 34–35, 60–62. Summit argues that the complaint fails to allege any wrongful act by CH Logistics, but merely that it was negligent vicariously due to its employee Ivory. ECF No. 73 at 7 ("Plaintiffs do not allege that CH Logistics itself was negligent in some manner[,] only that it was liable on account of its relationship with Ivory.").

I disagree with Summit's framing. Under *respondeat superior*, the negligent act of an employee must be imputed to his employer when identifying a wrongful act under *Miller*. For the same reason, *respondeat superior* is why plaintiffs alleged that Summit negligently hired CH Logistics even though it was really some anonymous Summit employee who made the hiring decision. In some sense, *every* act taken by a company is really an act taken by one of that company's employees. But to sue for harm, courts do not require plaintiffs to join every company with one or more John Doe individuals working at the company who actually made the wrongful acts or omissions. Summit cannot have this claim dismissed simply because plaintiffs named both CH Logistics and Ivory rather than allege, as they might have, that CH Logistics drove and crashed the truck. After all, if Summit itself can be accused of negligent hiring, why then could CH Logistics not be accused of negligent driving?

For instance, imagine Washington Producers had hired another middleman and that middleman then hired Summit, who hired CH Logistics who hired Ivory, and plaintiffs sued the middleman for negligently hiring Summit. That middleman could not avoid

6

liability by claiming the wrongful act allegedly committed by Summit (negligently hiring CH Logistics) was actually committed by a Summit employee. Summit's argument would, taken to its logical conclusion, make it impossible to sue any person for negligently hiring an independent contractor business. The defendant could simply claim that the predicate wrongful act was committed by the individuals working for the business rather than the company itself.

It ultimately does not matter how the complaint slices up the defendants. Plaintiffs are required to plead facts allowing for an inference of liability, not precise legal theories. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010). Since the complaint alleges that Ivory was "acting in the course of and within the scope of his employment" with CH Logistics, the ultimate crash can be attributed at the pleading stage to the negligent driving of CH Logistics. And since Summit's allegedly negligent act was its failure to consider CH Logistics's pattern and record of unsafe driving, there is a causal nexus between Summit's alleged negligence and CH Logistics's alleged negligence.

*** 

As to whether a principal may be liable for negligently hiring an independent contractor in the first place, I must try to "predict how the relevant state court would rule." *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054 (7th Cir. 2026). Some of the confusion in this area hinges on whether Wisconsin recognizes a single tort of "negligent hiring, training, or supervision," or whether negligent hiring, negligent training, and negligent supervision are three separate torts. *See Miller*, 219 Wis.2d at 267 ("In sum, we hold that the tort of negligent hiring, training, or supervising is a valid claim in Wisconsin."). The

7

distinction matters because CH Logistics is an independent contractor who, by definition, is not trained or supervised by its clients.

The existing Wisconsin precedent on this is unhelpful, but seems to suggest that negligent hiring, training, and supervision are three different torts. For instance, Summit cites to the recent decision *Estate of Lorenzo by Rodriguez v. Marshall Public Safety LLC*, 2025 WI App 44, 25 N.W.3d 101, for its holding that a principal could not be liable for negligently supervising an independent contractor whose employee committed a wrongful act. The court's decision was based on the lack of a close agency relationship between the two companies, so there could be no expectation of supervision and thus no causal nexus between poor supervision and the underlying wrongful act. Like in *Lorenzo*, Summit argues that plaintiffs' claim must be dismissed because plaintiffs fail to allege that Summit "had sufficient control over [CH Logistics or Ivory] to prove causation." ECF No. 73 at 8 (quoting *Lorenzo*, ¶ 23).

But here, plaintiffs allege only negligent *hiring*. I see no reason under Wisconsin law or public policy to categorically find that principals cannot be liable to third parties for negligently hiring an independent contractor. Hiring does not require an agency relationship or necessarily come with the expectation of supervision, so negligent hiring is not incompatible with an independent contractor arrangement.

To support this conclusion, I note that Wisconsin courts apply a special rule when the injured plaintiff was the independent contractor's employee. *See Tatera v. FMC Corp.*, 2010 WI 90, ¶ 22, 786 N.W.2d 810. In that special case, "[a] principal employer may be liable to an independent contractor's employee for injuries caused by the principal employer's affirmative act of negligence." *Id.* For public policy reasons pertaining to

8

workers compensation, the Wisconsin Supreme Court held that employees of independent contractors may only recover from the principal who hired their employer for negligence if the principal engaged in an "affirmative act of negligence." *Id.*; *Wagner v. Continental Cas. Co.*, 143 Wis.2d 379, 397–98, 421 N.W.2d 835 (1988). The court also held in *Wagner* that "the act of negligently hiring an independent contractor to perform demolition work did not constitute an affirmative act of negligence but rather an omission." *Tatera*, ¶ 23.

Putting *Tatera* and *Wagner* together, the Wisconsin Supreme Court explicitly contemplated suits against principals for negligently hiring an independent contractor. And by limiting liability where the plaintiff is an employee *and* where the negligence was merely negligent hiring, it suggests there is no comparable limit on liability for negligent hiring to when the plaintiff is a non-employee third party. *Id.* Therefore, applying Wisconsin law as best I can, I find that plaintiffs have adequately pled element four and therefore a claim for negligent hiring.

## C. Public Policy Factors

Summit argues that, even if the amended complaint states a claim against Summit for negligent hiring, public policy factors described in *Miller* preclude imposing liability. The Wisconsin Supreme Court has said that liability should be disallowed where:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Miller*, ¶ 19. Summit asserts that reasons (1) and (6) should limit its liability because the vehicle crash was "too remote" from Summit's decision to hire CH Logistics, and allowing liability so far up the hiring chain would "enter a field that has no sensible or just stopping point." *Id.*

These arguments might have merit, but are better suited for summary judgment or trial where the court can consider the actual facts rather than inferences drawn from the complaint. As discussed above, I cannot say that Wisconsin law categorically bars negligent hiring suits against transportation brokers for public policy reasons. But if the facts later show that a public policy exception is warranted in this case, it can be considered at that time.

## D. Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress, plaintiffs must allege that (1) Summit was negligent with respect to hiring CH Logistics, (2) the decision to hire CH Logistics was a cause of plaintiffs' emotional distress, and (3) the emotional distress is severe. *Camp ex rel. Peterson v. Anderson*, 2006 WI App 170, ¶ 18, 721 N.W.2d 146; Wis. JI-Civ. 1511, *Negligent Infliction of Severe Emotional Distress* (2024). For the reasons given above, the new complaint adequately alleges all three elements.

10

## III. CONCLUSION

Therefore, **IT IS ORDERED** that Summit Logistics Group's motion to dismiss for failure to state a claim (ECF No. 72) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

11